## STEPHEN LITCHFIELD *versus* ABIEL CUDWORTH.

A grantor conveyed by deed " all his right, title, interest and estate, in and to all the estate, real, personal or mixed, which J. C. *and* J. C. junior died seised or possessed of." It was *held,* that the deed operated as a conveyance of the interest of the grantor in all the estate, whether joint *or several,* of J. C. and J. C. junior.

Where an execution issued against the owner of an equity of redemption, was extended on the land, and the return alleged, that the *debtor's right* in the premises was appraised, it was *held,* that the extent was invalid ; for it did not appear, by the return, that the appraisers excluded the mortgage from their consideration in making the appraisal.

If an officer, having levied on land of the debtor, returns that he chose two of the appraisers, " A, the debtor, having neglected to choose one," when in fact B was the debtor, the error (unamended) is fatal to the levy.

The levy of an execution against a husband, upon his wife's land during *his* life, although the return do not show whether he is entitled to the curtesy or not, will pass his interest, whatever it may be, in the land.

So, where such execution is extended upon all the interest and estate of the husband in land of the wife, but the return does not describe the land as being held in right of the wife, the extent will pass all the interest of the husband therein, from whatever source his title to it may have been derived.

A husband's life estate in his wife's land may be levied on, either by taking the rents and profits for a definite period, or by taking the whole life estate at an appraisal of the value founded on a proper estimate of the probability of human life.

But where the whole life estate is of more value than the amount of the execution, *it seems* that the more proper, if not the only mode, is to levy on the rents and profits until they shall satisfy the execution.

The *St.* 1805, *c.* 90, § 2, provides for the allowance to the widow of an intestate, of her wearing apparel " and such further necessaries as the judge of probate shall order, regard being had to the state of the family under her care." It was *held,* that if any person is dissatisfied with the allowance made to the widow by the judge of probate, his remedy is by appeal ; and that this Court will not collaterally inquire into the exercise of this discretionary power, however disproportionate to the whole estate the allowance may seem.

Where a license is granted to an administrator to sell the real estate of the intestate for the payment of his debts, and the administrator becomes the purchaser, either

Litchfield
*v.*
Cudworth.

directly or indirectly, the sale is not absolutely *void ;* but it may be either avoidea or confirmed by the heirs or their assignees ; and in such case, they are not bound to act jointly, but each one has an individual right of election.

Where an administrator was licensed to sell real estate of the intestate for the payment of his debts, to the amount of $640, and he sold the whole, which consisted of several parcels, for the sum of $953·33, it was *held*, that the sale was wholly void, although such real estate was under a mortgage.

WRIT of entry. The defendant pleaded *nul disseisin ;* upon which plea issue was joined.

The trial was before *Putnam* J.

It appeared, that on February 24, 1807, the whole of the real estate described in the declaration, which consisted of several parcels, was conveyed by John Cudworth to his son, John Cudworth junior ; that on the same day it was mortgaged back by the son, upon the condition of supporting his father and mother during their lives ; that the son died intestate, having survived his father ; that the mother was still living ; and that upon the death of the son, the estate descended to his heirs, subject to the mortgage.

The demandant claimed title to the undivided share of this real estate, which belonged to Charles Cudworth, one of the heirs of John Cudworth junior, by virtue of the extent of an execution upon his real estate, on August 31, 1830. By the return of this execution it appeared, that in making the extent the *debtor's right* in the premises was appraised.

The demandant claimed to hold the undivided share of Mrs. Curtis, another of the heirs, by virtue of an execution issued against her husband, Nathan Curtis, and extended, in December 1830, on " all his interest, right and estate " in the premises, " being the improvement during his life," which was appraised and set off at a gross sum. The return did not describe the estate as being held by him in right of his wife. The return stated that one of the appraisers was chosen by the officer, " for *Charles Cudworth* the debtor, the said *Cudworth* neglecting to choose."

By a deed, dated December 14, 1830, Mercy Litchfield, another heir, together with her husband, Azotus, conveyed to the demandant " all our right, title, interest and estate, in and . to all the estate, real, personal or mixed, which John Cudworth *and* John Cudworth junior died seised or possessed of."

It also appeared, that in 1829 the tenant was appointed administrator of the estate of John Cudworth junior ; that the rea estate of the deceased was inventoried at the sum of $2247, from which the sum of $348 was to be deducted on account of the incumbrance, and that the personal estate was inventoried at the sum of $781·17 ; that the sum of $700 was allowed by the Probate Court to the widow of the intestate ; that in February 1830, the tenant was licensed by the Probate Court to sell real estate of the intestate for the payment of his debts, to the amount of $640 ; and that under this license, the whole real estate of the intestate was sold by auction for the sum of $953·33 ; that the tenant requested Paul Bailey to buy a large part of the real estate at this sale, for the tenant and his brother Urbane Cudworth, limiting him to the sum of $1000 ; that it was accordingly struck off to Bailey for the sum of $850 ; that the tenant, as administrator, on March 20th, 1830 conveyed it to Urbane, for that consideration ; and that on the 27th day of the same month, Urbane, by two deeds, reconveyed to the tenant the premises which are the subject of this action.

The tenant excepted to the extents of the two executions, because they were not made in the manner prescribed by the statute in regard to mortgaged property.

The demandant excepted to the authority of the judge of probate in granting the license to sell, the deficiency of the personal estate being occasioned by the allowance to the widow.

The demandant also objected to the validity of the tenant's title, because more of the real estate was sold than the administrator was authorized by the license to sell ; and because the administrator had no right to purchase for himself.

Upon these facts the Court were to give judgment for the demandant or the tenant, as the law should require.

*Beal* and *Thomas*, for the demandant, to the point ; that the purchase of the land by the administrator was void, on principles of legal policy, cited *Ex parte Bennett*, 10 Vesey, 384 ; *Harrington* v. *Brown*, 5 Pick. 519 ; *Barker* v. *Marine Ins. Co.* 2 Mason, 369 ; to the point, that the sale was void, because more of the real estate was sold, than the adminis-

*Oct 24th,*
*1832.*

trator was authorized by the license to sell, and that the mortgage made no difference in this respect, *Adams* v. *Morrison*, 4 New Hamp. R. 166 ; *Swasey* v. *Little*, 7 Pick. 296 ; and to the point, that an extent of an execution on land under mortgage is valid if the appraisement be made without any deduction for the incumbrance, *White* v. *Bond*, 16 Mass. R. 400.

*Baylies* and *Gay*, for the tenant, to the point, that the purchase by the administrator was not, *per se*, fraudulent and void, cited *Fay* v. *Hunt*, 5 Pick. 398 ; *Jennison* v. *Hapgood*, 7 Pick. 1 ; *Harrington* v. *Brown*, 5 Pick. 521 ; to the point, that Curtis's right in his wife's real estate should have been levied on, by taking the rents and profits for a definite period, *Barber* v. *Root*, 10 Mass. R. 260 ; *Chapman* v. *Gray*, 15 Mass. R. 439.

MORTON J. delivered the opinion of the Court. The whole of the real estate described in the demandant's declaration, and of which he demands certain undivided shares, was in 1807 the estate of John Cudworth. In that year Cudworth conveyed the same to his son John Cudworth junior, who mortgaged it back to secure the support of his father and mother during their lives. The son, having survived the father, died, leaving the mother alive, who is still living.

This estate, upon the death of John Cudworth junior, descended to his children, subject to the mortgage aforesaid, and liable for the payment of his debts, if his personal property proved insufficient for that purpose. The portion of each heir vested in him upon the death of his father, and thereupon became liable to be attached and taken on execution in payment of his debts, and might be conveyed by deed, like other real estate.

The demandant claims to hold the shares of three of the heirs ; one, by a deed from Azotus and Mercy Litchfield, another, by the levy of an execution on the right of Charles Cudworth, and the third, by the levy of an execution against Nathan Curtis, upon the improvement of the estate of his wife ; Mrs. Litchfield, Mrs. Curtis and Charles Cudworth, being three of the heirs of John Cudworth junior.

There appears to be no valid objection to the demandant's

Litchfield<br>
*v.*<br>
Cudworth.

title to Mercy's share. By this deed, she and her husband convey " *all our right, title, interest and estate, in and to all the estate, real, personal or mixed, which John Cudworth and John Cudworth junior died seised or possessed of.*" The argument that this will pass only their *joint estate*, is quite too technical and refined, especially when it is recollected, that they had no *joint estate*. It was the manifest intent of the parties, that the grantors' right in all the estate, whether joint or several, of their father and grandfather, should pass. And such must be the operation of the deed. It is not uncommon to construe *and* to mean *or*, and *or* to mean *and*, when necessary to carry into effect the intention of the parties.

To each of the levies, several objections are made, which will be considered. And first, those which apply to the levy on Charles's share. The estate being under mortgage, the equity of redemption only could be taken on execution. The mode of levying upon equities is prescribed by *St.* 1798, *c.* 77, § 3 and 4. That this is the most proper mode cannot be doubted ; and it was, at first, very questionable, whether it did not supersede every other mode. And even now it may be considered doubtful, whether the judgment creditor, knowing of the existence of a valid incumbrance, may have his election to sell the equity of redemption by auction, or to extend upon the land by appraisal without regard to the incumbrance. But as it sometimes may happen, that mortgages may exist without the knowledge of the creditor, or that he may not know whether they are genuine or fictitious, or may suppose that the incumbrances have been removed, or may desire to contest them on the ground of fraud or collusion, it has been holden, that he may extend his execution upon the whole estate, by an appraisal of its full value. *Warren* v. *Child*, 11 Mass. R. 222 ; *White* v. *Bond*, 16 Mass. R. 400. Such a levy will pass all the debtor's interest, whatever it may be. But an equity of redemption as such, cannot be taken in this form. If the amount of the incumbrance be deducted in the appraisal, the levy will be void. *Barnard* v. *Fisher*, 7 Mass. R. 71. And this rule is founded upon good reasons ; for the mortgager may voluntarily remove the incumbrance, or may be compelled on his personal security, to pay the debt, and

thus the creditor may get the estate relieved of an incum-
brance, which was considered in the appraisal.

As this is a statute mode of conveyance, all the require-
ments of the statute must not only be complied with, but this
must appear in the return itself.   It cannot be supplied by
evidence *aliunde.   Williams* v. *Amory,* 14 Mass. R. 20 ;
*Allen* v. *Thayer,* 17 Mass. R. 299 ; *Tate* v. *Anderson,* 9
Mass. R. 92 ; *Bott* v. *Burnell,* 9 Mass. R. 96 ; *S. C.* 11
Mass. R. 163 ; *Eddy* v. *Knapp,* 2 Mass. R. 154 ; *Whitman*
v. *Tyler,* 8 Mass. R. 284.   And upon this principle it should
appear, with reasonable certainty, that the whole estate, and
not the equity of redemption, was appraised.   The return
does not show this.   The appraisal was of the *debtor's right*
in the premises, which would apply quite as well to the
debtor's *interest* in the equity, as to his portion of the land
itself, and renders it *doubtful* whether the incumbrances were
not deducted, and indeed *probable* that they were.   If we
were at liberty to go beyond the return and to compare the
appraised value of the debtor's share with the inventory of
the estate, this view would be confirmed.   We are therefore
of opinion, that this levy is invalid, and that the demandant's
title to this share fails.

The objections to the levy of the execution against Curtis
are more numerous.

1. The return shows, that the officer chose two of the
appraisers ; and the cause assigned is, that *Cudworth,* the
debtor, neglected to choose one.   Curtis was the debtor, and
this objection must prevail, unless the error, which doubtless
is merely clerical, may be corrected by liberty to amend
from the proper tribunal.

2. The estate was set off during the life of Curtis.   It
does not appear, whether Curtis was entitled to the curtesy
or not.   But whether he had an estate for his own life, or
limited by that of his wife, whatever he had would pass.   A
good levy upon a larger estate than the debtor has, will
operate upon all that he in fact has.   *Pond* v. *Pond,* 14 Mass.
R. 403.

3. Although the return does not describe the estate as
holden by Curtis in right of his wife, yet as all his interest,

right and estate in the premises was taken, it will pass all that he owned, from whatever source his title to it may have been derived. It is not necessary to describe the nature of the estate or title. General words, if sufficiently comprehensive, will be effectual ; although a greater estate than the one described cannot pass, yet a less estate may.

4. Although somewhat variant views have been taken of the subject at different times ; *Barber* v. *Root*, 10 Mass. R. 260 ; *Chapman* v. *Gray*, 15 Mass. R. 439 ; yet there now is no doubt, that the husband's right in his wife's real estate may be levied upon, either by taking the rents and profits for a definite period, or by taking the whole estate at an appraisal of the value founded upon a proper estimate of the probability of human life. When the judgment does not amount to a sum large enough to require the whole life estate, it would be difficult if not entirely impracticable to adopt the latter mode. And situated as this estate was, it would seem, that the more proper if not the only mode, would have been to levy upon the rents and profits until they should satisfy the execution, if they were sufficient for the purpose.

5. It appears that all Curtis's right was appraised and set off for a gross sum. If the estate had been unincumbered, or if it had appeared, that it was set off as if unincumbered, the levy might have been valid. But if the appraisers made a deduction on account of the outstanding mortgage, this would be a fatal error. It was the duty of the administrator to redeem the estate by paying off the mortgage, if he had assets wherewith to do it. Neither the creditor, nor appraisers could know whether this would be done or not. Had it been redeemed, the creditor would have obtained it for much less than its real value. Now it does not appear, nor is it to be inferred, from the return, or believed on any ground, that the appraisers excluded the incumbrance from their considera tion, in appraising Curtis's right. And this defect is fatal to the demandant's title.

From the foregoing view of the case it appears, that the demandant has established his title to one share, and failed as to the other two. He must therefore have judgment for Mercy's share, unless upon examination of the tenant's claim it shall appear that he is entitled to the whole.

3 *

The tenant claims the estate by virtue of a deed made by himself as administrator of the estate of John Cudworth junior, to his brother Urbane, who soon after reconveyed to him. This sale was made under a license from the Probate Court. To the validity of this sale there are three objections.

1. The demandant's counsel contend, that this sale was void, because the Probate Court had no power to license a sale of the whole real estate ; it not being necessary for the payment of the intestate's debts, nor even of a part, the personal estate being sufficient to pay all the debts. Whether the court had power to grant a license to sell the whole real estate, it is not necessary to inquire, because no such power was exercised. Deducting the allowance made to the widow, the personal estate would not have been sufficient to pay the debts and expenses of administration ; and if a license to sell a part was necessary, it is immaterial to the present question, whether it was limited to one sum or another.

Now the *St.* 1805, *c.* 90, § 2, authorizes the judge of probate to allow the widow such *necessaries* as may be proper, regard being had to the state of the family under her care. The general words used in the fifth section, rightly understood, do not conflict with this provision in the second, but are qualified by it. The whole statute is to be construed together, and each section and provision to be so understood, that it will conform to all the others. If any person be dissatisfied with the allowance by the Probate Court, his remedy is by appeal. And we cannot collaterally inquire into the exercise of this discretionary power, however disproportionate to the whole estate the allowance may seem to us. *Brazer* v. *Dean*, 15 Mass. R. 183.

2. The tenant, who as administrator made the sale, requested one Bailey to bid off the estate for himself and his brother Urbane. Bailey did so, for a much less sum than he was authorized to bid. The deed was made by the tenant directly to his brother, who soon after reconveyed it to him. The demandant's counsel contend, that this sale was void, because the administrator could not convey to himself either directly or indirectly.

It is a salutary and sound principle, that agents to sell cannot be purchasers ; that the characters of seller and buyer

are so entirely incompatible, that they can never be united in the same person. And generally, that trustees of every description, who have power to sell, can never by direct or indirect means become the purchasers of the trust property. *Copeland* v. *Mercantile Ins. Co.* 6 Pick. 204 ; *Church* v. *Mar. Ins. Co.* 1 Mason, 341 ; *Barker* v. *Same*, 2 Mason, 369 ; Paley on Agent & Pr. 32 ; *Ex parte James*, 8 Vesey, 337 ; *Ex parte Kennett*, 10 Vesey, 381.

But these principles do not render the sale absolutely *void*. Strangers to the property cannot call it in question. It is voidable. It is an abuse of authority which may be taken advantage of by any one whose interest is affected. Hence cestui que trusts and all for whom the trustee or agent acted, have an option to avoid the sale and retain the property sold, or to confirm the sale and receive the consideration, as may be for their interest. *Jennison* v. *Hapgood*, 7 Pick. 1 ; *S. C.* 10 Pick. 77.

In the case at bar, the creditors, having received their debts, have no interest in the estate or the validity of the sale. They never can be required to refund. The heirs are the cestui que trusts. The assignee of an heir would seem to stand in the same relation to the estate, as his grantor. The heirs therefore, or their assignees, have an election to avoid or confirm the sale. And in doing this, hey are not bound to act jointly. Each one has an indi vidual election. If the affirmance of the sale by some, and the avoidance of it by others, will produce great inconvenience in the final settlement of the estate, it will fall, where it ought, upon the administrator, who has violated his trust and by his wrongful act caused the embarrassment. *Houghton* v. *Hapgood*, 13 Pick. 154 ; *Grout* v. *Hapgood*, 13 Pick. 159 ; *Jennison* v. *Hapgood*, 14 Pick. 345.

3. But there is one other, and, if possible, a more fatal objection to the proceedings of the administrator. He exceeded the authority given him. He was licensed to sell to the amount of $640 ; and he sold the whole estate for $953·33. And we think for this cause the sale was void.

An administrator, without a license from a competent court, has no power to sell the real estate of his intestate.

His authority is derived wholly from the decree of the court. The court has a discretion. He has none. He is bound strictly to execute the authority given him. And a deed by him, not given in pursuance of his authority, would have no more operation to pass the estate of his intestate, than a deed made by a stranger, or his own deed of a stranger's land. If under an authority to sell a part, he sells the whole, the act is unauthorized and void.

The sale cannot be holden to be good to the amount of the license and void as to the remainder. It must be wholly valid or wholly invalid. How can it be apportioned ? Who shall determine which part and how much the purchaser, and which and how much the heirs shall hold ?

But even if this were not so, and the sale were deemed only voidable, we are of opinion that the conveyance by the heir and the commencement of this action by his assignee, is a sufficient avoidance of the administrator's sale. And the demandant must have judgment for the share to which he has shown a good title.

*Tenant defaulted*