McComb, Administratrix, Appellant, vs. McComb, Respondent.

*January 17—April 7, 1931.*

For the appellant there were briefs by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish* and *W. H. Voss* of counsel, all of Milwaukee, and oral argument by *Mr. Fish* and *Mr. J. H. Marshutz.*

For the respondent there was a brief by *Barber, Keefe, Patri & Horwitz* of Oshkosh, attorneys, and *Walter H.*

*Bender* of Milwaukee of counsel, and oral argument by *Mr. Frank B. Keefe* and *Mr. Bender*.

The following opinion was filed February 10, 1931:

FRITZ, J.    Plaintiff is the administratrix of the estate of Mark W. McComb, who died on March 10, 1929, and who was the only son of the defendant.    He also has two daughters.    In so far as necessary to understand the questions decisive on this appeal, the following facts, briefly stated, were found by the trial court: Prior to December 11, 1924, defendant, in a conference with his three children, told them that to avoid probate proceedings upon his death, he would rent a safety-deposit box in the name of each child; put in each box such securities as he saw fit from time to time; keep the keys in his safe, with tags attached, marking the keys intended for each child, so that upon his death each child could open the box for which a key, with a tag attached bearing the child's name, was found in his safe; and that the defendant was to own and have the sole and complete use and control of all securities, and dispose of them as he pleased during his lifetime.    On December 11, 1924, defendant rented a box at the Marshall & Ilsley Bank in his and his son's name.    Both signed the contract for the box, and that contract provided that either could open the box. The son's check was used to pay the rent for the box, but defendant immediately reimbursed his son for that check. Both keys were delivered to the defendant, and were in his possession until he surrendered them to the bank on March 11, 1929.    On December 11, 1924, defendant placed in the box coupon bonds, which were payable to bearer, and which were in separate envelopes, each of which had an indorsement similar to the following:

"Dominion of Canada.    Total $5,000.00, Rate 4½ %; Denomination $1,000.00.    Due February 1st, 1936.    Nos. 22193–O, 22194–O, 22195–O, 22196–O, 22197–O.    Inter-

est payable February 1st and August 1st. This is the property of A. C. McComb, Oshkosh, Wisconsin."

Thereafter, defendant from time to time removed, sold, exchanged, and replaced bonds in envelopes similarly indorsed. He cut all coupons upon maturity and mailed them to his son, who deposited them to the son's account and immediately sent his check for the amount to the defendant. Defendant opened the box forty-five times and each time signed his son's name to the receipt. The bank had no receipt signed by the son for opening the box. During the entire time the son had a box exclusively for himself and his wife, at another bank.

Prior to 1927 the defendant reported the income which he received on those bonds in his income tax reports. He did not include such income in his reports for 1927 and 1928, but gave his son the necessary data as to the income on the coupons which his son had deposited and remitted for to defendant; and he directed his son to report that income in the son's name, and thereafter reimbursed the son for his tax payments by reason of that income.

"Defendant remained in sole control of the securities and the keys to the box, and received the income from the bonds from the beginning until Mark's death, in accordance with the intention of the parties persisting until the end. None of the bonds in the Marshall & Ilsley Bank were ever delivered to Mark W. McComb. . . . The unrestricted possession, use, control, and dominion of the securities in the Marshall-Ilsley safety-deposit box have, from the beginning, been and remained in the defendant, A. C. McComb. Mark McComb never had or claimed . . . adversely to his father, the defendant herein, or otherwise, any possession or control over said securities."

The court also found that the defendant executed deeds of real estate in which his son was named as grantee, and which provided for a consideration which was to be paid; that he never delivered those deeds to Mark, and never put

them in the Marshall & Ilsley Bank box; and that in 1928 the defendant wrote letters in his son's name for tax bills for the real estate described in those deeds, and had his son pay the taxes with money furnished by defendant.

Although not covered by the court's findings, it is undisputed that as soon as the bank opened on March 11, 1929, the day after his son's death, the defendant, in the absence of any representative of the son's wife or his estate, removed the securities from the safety-deposit box and surrendered the keys to the Marshall & Ilsley Bank.

Upon the facts found, the court concluded that the title to all of the securities in the safety-deposit box was at all times in the defendant; that the deeds to real estate were never delivered to defendant's son, and that title to that real estate was at all times in the defendant; and that the defendant was entitled to judgment dismissing the complaint.

There is but little conflict or contradiction in the evidence, although it may admit of some inferences which may be somewhat at variance with the facts as found by the court. At all events, the trial court's findings are not contrary to the weight and preponderance of the evidence. They must be permitted to stand unless they are predicated upon incompetent or irrelevant testimony. Upon the facts found, the court rightly concluded that the securities and deeds were never delivered to Mark McComb; that no title to the securities or real estate ever passed to him from the defendant; that the plaintiff is not entitled to have the defendant account to her for the securities or the real estate; and that defendant was entitled to the dismissal of the complaint.

Plaintiff contends that the court erred in receiving "the defendant's testimony that from the time he and his dead son rented the box he had possession of the two keys which were then delivered to them, and second, that he had written on the outside of certain envelopes a statement that he owned the bonds contained therein and had put them in this safety-

deposit box." It is contended that that evidence is within the inhibition of sec. 325.16, Stats., which prohibits a party from testifying to a transaction with deceased persons; and also that the indorsements on the envelopes were inadmissible because they were self-serving declarations.

On the subject of the keys, the proceedings in relation to the only testimony of defendant which was received over plaintiff's objections are as follows:

"*Q.* Mr. McComb, you may state whether or not from the time of the leasing of this box on December 11, 1924, at the Marshall & Ilsley Bank, you had the two keys to that safety-deposit box in your possession?

"Mr. Fish: That is objected to as incompetent; the witness is incompetent to show possession. He has testified that Mark McComb and he were present when they leased the box. This is an indirect method of testifying to that transaction.

"(Which objection being overruled, the plaintiff duly excepted.)

"*A.* I have ever since.

"*Q.* At the time of the surrender of the box on the morning of March 12, 1929, did you deliver both keys of that box to the custodian, Mr. Trumpff?

"(There being the same objection, which was overruled, the plaintiff again duly excepted.)

"*A.* I did, to Mr. Trumpff."

Plaintiff contends that those answers are in effect testimony that the son gave the keys to the defendant, and that thus the defendant was permitted to testify to a transaction with his deceased son. However, such was neither the effect nor the purpose of that testimony. On the contrary, its effect and purpose was, as claimed by defendant, that the keys were in defendant's exclusive possession from the time he leased the box until he surrendered it. There was no evidence that either of the keys was ever in the son's possession. The nearest approach to proving possession by the son is claimed by plaintiff to arise by inference from the

testimony of the bank's employee (to whom the keys were surrendered by the defendant) that when boxes are leased, keys are turned over to the owner. But that employee had had nothing to do with the leasing of the box in question. On the other hand, there is the corroborated and uncontradicted testimony that, under the arrangement between the defendant and his son and daughters, all of the keys were to be and remain in defendant's exclusive possession until his death; that defendant signed each and every one of the forty-five receipts to open the box, on the only occasions on which it was opened; and that the defendant had the keys when he surrendered them to the bank on March 12, 1929. As there is no proof that either of the keys was ever in the son's possession, the defendant's testimony as to the keys, in answer to the questions quoted above, manifestly did not relate to a transaction with his son, and hence was not incompetent by reason of sec. 325.16, Stats.

Likewise, under the circumstances of this case, the indorsements on the envelopes in the form hereinbefore quoted cannot have any effect, or be the basis of any inference, in relation to any transaction with the deceased son. Plaintiff's counsel contend:

"The purpose of this is to show that the plaintiff's intestate saw the document and, by failure to comment, admitted its correctness. The effect is exactly the same as if he had said to the plaintiff's intestate, *These are my bonds,* and the plaintiff's intestate had said *Yes.* It is clearly an intent to prove a transaction with a deceased person."

However, as we read the record, there is no proof that the son ever saw the envelopes or the indorsements thereon. Defendant does not claim that the son ever saw the envelopes, and consequently does not contend that the son, by failing to comment, admitted the correctness of the statements in the indorsements. Again, on the contrary, the

proof and defendant's contentions consistently are that the son never opened the box and never saw the envelopes or the contents thereof. Consequently, there would be no basis in the evidence for inferring that the indorsements admit of any inference unfavorable to the son, or to plaintiff, by reason of the occurrence of any transaction on the part of the son in relation to the envelopes or the indorsements thereon; and there is no occasion for assuming that the learned circuit judge erroneously indulged in any such inference as to those indorsements.

On the other hand, the envelopes with the defendant's statement indorsed thereon were just as much an integral part of the contents of the box as the securities. The contents of the box constituted the very subject matter of this action, and the condition of the contents, from the time of deposit to the time of removal, constitutes the fact in controversy. Testimony as to what constituted the contents of the box, and what was the condition of the contents, including the envelopes and indorsements thereon, when they were put in and when they were taken out of the box, was certainly material and relevant. The proof that the securities were in the envelopes was as relevant and competent as proof that the securities were in the box; and the envelopes, with the indorsements, which were proven to have been thereon when they were deposited in the box, were all admissible as an integral part of the contents of the box at the times involved in this action. As all are part of the fact in controversy—the *res gestæ*,—all are admissible, even though there may be included therein a self-serving declaration.

"When declarations or acts accompany the fact in controversy and tend to illustrate or explain it, they are treated, not as hearsay, but as original evidence; in other words, as part of the *res gestæ*." 1 Jones, Evidence, § 347.

In *Mack v. State,* 48 Wis. 271, 283, 4 N. W. 449, this court quoted with approval the following:

"Where evidence of an act done by a party is admissible his declarations made at the time, having a tendency to elucidate, explain, or give character to the act, are admissible. They are part of the transaction, and for that reason are admissible, and it makes no difference, so far as the admissibility of the declaration is concerned, whether it be in favor of or against the party making it." *Hamilton v. State,* 36 Ind. 280. See, also, *Pinney v. Jones,* 64 Conn. 545, 549, 30 Atl. 762.

In *Roebke v. Andrews,* 26 Wis. 311, 317, Mr. Justice PAINE said:

"The general rule, that a party cannot make evidence for himself by giving his own statements as proof of the facts stated, is of course familiar. But another rule is equally familiar, that wherever the nature and character of an act done by any person are in question, what he says at the time in relation to it is admissible as original evidence, as a part of the act itself, or, as the law terms it, a part of the *res gestæ.* This rule is one of very wide and constant application. And to exclude such statements upon the ground either that they were mere hearsay, or that they were the declarations of the party who offered them, would be to deprive courts and juries of a most material part of the elements essential to an intelligent appreciation of human conduct."

That rule has been applied in *Lamoreux v. Huntley,* 68 Wis. 24, 31 N. W. 331; *Cuddy v. Foreman,* 107 Wis. 519, 83 N. W. 1103; *Griswold v. Nichols,* 126 Wis. 401, 105 N. W. 815.

For the reasons stated, no error was committed in receiving the evidence which plaintiff contends was incompetent and irrelevant.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on April 7, 1931.