KIDDER, Appellant, vs. KIDDER, Respondent.

*June 3—June 22, 1936.*

184

For the appellant there were briefs by *R. M. Rieser* of Madison, *A. E. Bleekman* of La Crosse, and *Olin & Butler* of Madison, and oral argument by *Mr. Rieser* and *Mr. Bleekman.*

For the respondent there was a brief by *Geo. H. Gordon, Law & Brody* and *Hale & Burke,* all of La Crosse, and oral argument by *Quincy H. Hale* and *D. S. Law.*

MARTIN, J.   The assignments of error are as follows:

"1. The court erred in permitting the introduction of hearsay and self-serving declarations of the deceased over objection of the plaintiff as to the nature of the interest of the deceased in the Pyroil Company.

"2. The court erred in permitting witnesses to testify over objection of the plaintiff as to conversations of witnesses with deceased concerning the nature of his interest in the Pyroil Company in the absence of J. K. Kidder.

"3. The court erred in refusing to instruct the jury as to the nature and purpose of testimony given by witnesses relating to conversations with deceased in the absence of the plaintiff, as requested by the plaintiff.

"4. The court erred in refusing to grant a new trial because of errors committed by the court in allowing the introduction of incompetent evidence.

"5. The court erred in refusing to reopen the judgment and set aside the verdict upon plaintiff's motion because of improper conduct of the jurors.

"6. The court erred in permitting the introduction of confidential communications between J. K. Kidder and his attorney, and the introduction of other private and personal records obtained by the defendant by means of rifling the private file used and exclusively under the control of the plaintiff.

"7. The court erred in refusing to grant judgment, notwithstanding the verdict, in accordance with plaintiff's motion therefor."

On the main issue as to the existence of the alleged copartnership, the testimony is voluminous, each party having called upwards of twenty-five witnesses who testified as to certain facts, statements, and circumstances tending, on the part of the plaintiff, to establish the existence of the claimed copartnership, and on the part of the respondent to negative the existence of the alleged copartnership.

A large part of the evidence offered by the defense was of a documentary nature and was received without objection. Among such documentary evidence were the income tax returns made and filed by W. V. Kidder in which it was stated that he was the sole owner of Pyroil Company and that it was not a partnership, and in which plaintiff's name was entered as an employee. Appellant also made and filed income tax returns in which he indicated his connection with Pyroil Company as an employee. Appellant also assisted in preparing a financial statement for Dun & Bradstreet, showing W. V. Kidder as sole owner of Pyroil Company. Several letters were written by appellant to distributors of the products of Pyroil Company in which he stated that W. V. Kidder was the sole owner of the company. Some of the tradespeople testified on the part of the defense that they asked W. V. Kidder as to the ownership of Pyroil Company in the pres-

ence of appellant and that he claimed to be sole owner. It further appears that several court actions were prosecuted, all being brought in the name of W. V. Kidder as sole owner. The United States government secret census of manufacturers and the federal government oil tax bond showed W. V. Kidder as sole owner of Pyroil Company.

On November 19, 1931, pursuant to sec. 343.722, Stats. 1929, W. V. Kidder made and filed in the office of the register of deeds of La Crosse county his affidavit stating the location and nature of the business conducted under the name of the Pyroil Company, and in which he said:

"That said Pyroil Company is not a corporation, but is owned by said W. V. Kidder, and that he is the only person interested in said business conducted under said name."

Under date of May 11, 1934, appellant wrote to Attorney Fred L. Holmes, of Madison, in part, as follows:

"I want an opinion and from someone not too close to the picture here in La Crosse. *I have been informed that there is such a thing as an implied partnership* and that these have frequently been established by producing witnesses who can testify to the expressed intention of the decedent whose estate is in question. Now, assuming that I could prove such an interest in the Pyroil Company, what I want to know is whether the probating of the estate with no claim to such interest officially put in during the probate period, would bar me from such claim after the estate had been probated?"

The fire, wind, and workmen's compensation insurance policies were all issued in the name of W. V. Kidder as sole owner. All patents and copyrights on Pyroil were issued in the name of W. V. Kidder.

The jury's finding that appellant was not a partner with W. V. Kidder in the Pyroil Company is amply sustained by the evidence.

The first, second, fourth, and sixth assignments of error relate to the admission of certain evidence over the objection of plaintiff's counsel and may be considered together. The

particular testimony to which appellant's counsel makes reference is that of the witnesses Bauer, Holbek, Van Hecker, and McLeod. The witness Bauer testified that W. V. Kidder had told him "Joe was not a partner, and that he could not take him in as a partner." The witness Van Hecker testified that W. V. Kidder told him that the business was entirely owned by him. The other witnesses testified to similar statements made to them by W. V. Kidder when Joe Kidder was not present. It appears that the witness Bauer was sales manager of the Shell Oil Company, from whom W. V. Kidder bought all of his oil. He also helped W. V. Kidder in working out a formula for Pyroil, also in the installation of certain machinery. It further appears that his talk with W. V. Kidder about the ownership of the business was for credit purposes, some of the conversations being in the presence of the plaintiff. Van Hecker and McLeod were publicity men employed by Pyroil Company. They testified that at the inception of their business relationship with W. V. Kidder they made inquiry as to the ownership of the business for credit purposes and to know how to run their charges. W. V. Kidder informed them he was the sole owner of the business. Bauer, Van Hecker, and McLeod testified that plaintiff also stated or admitted to them that W. V. Kidder was the sole owner of the business.

The witness Heiberg testified that W. V. Kidder told him he "had provided a job for Dad and Joe."

In 3 Wigmore, Evidence (2d ed.), p. 799, § 1779, the author says:

"One in possession of property is presumed to be the owner of it. As making more definite and significant the nature of the person's custody or occupation, and as giving it the significance of an exclusive control and of a possession in the fullest sense, the acts and declarations of claim of title by the occupant may be decisive, and should therefore be considered for that purpose; without, however, conceding to them any force as hearsay assertions."

This rule finds expression in *Roebke v. Andrews,* 26 Wis. 311, 318, 319. At page 319 the court said:

"And inasmuch as every person whose title is in issue is permitted to make out a *prima facie* case by proving possession if he chooses, he must also be allowed to give character and effect to that possession by proving what title he claimed in connection with it. The immediate point of inquiry is, what title was claimed, and not what really existed. And, that being so, inasmuch as what a man claims consists of what he asserts and declares in respect to his rights, his declarations are original evidence of the fact. And to allow him to prove them for that purpose, is no more liable to the objection of allowing him to manufacture evidence for himself by his own statements, than it would be, where it became material to prove a particular demand or notice, to allow him to prove his own declarations containing such notice or demand. The very nature and object of the inquiry establish the limit to the effect of his declarations as evidence. They are evidence only to show to what extent he claimed title. And so far as they go beyond that, and assert any facts in regard to the title, they are not evidence of such facts."

To the same effect, see *McComb v. McComb,* 204 Wis. 293, 300, 234 N. W. 707, and cases there cited.

In Jones, Evidence (2d ed.), p. 339, § 351 (354), the author states the rule thus:

"The declarations of persons in possession of personal property are often received as verbal acts characterizing and explaining the nature of such possession, that is, as part of the *res gestæ.* Possession, unexplained, is *prima facie* evidence of ownership in the possessor. But such possession is entirely consistent with ownership in another; and, therefore the conduct and declarations of the possessor may be material to show the nature of his possession whether as owner, part owner or agent."

We find no error in the admission of the declarations in question. They are direct assertions made by W. V. Kidder of his sole ownership of Pyroil Company. They are statements made to persons who, for business reasons, would

naturally inquire as to the ownership of the business and apparently were made in the ordinary course of business.

The witness Bauer was permitted to testify that W. V. Kidder stated that he "had Joe around his neck all of his life, and that because of Joe's heavy drinking, he could not think of taking him into partnership." This was clearly incompetent, but in view of the statements made in Joe's presence as to the ownership of the Pyroil Company, also his own statements on different occasions that his brother was the sole owner of the business, we are satisfied that the admission of the incompetent declaration was not prejudicial to the plaintiff's case, particularly in view of the other competent evidence as to Joe's drink habit, and the testimony of the respondent that she had discharged him because of the trouble he was making at the company's place of business while under the influence of liquor.

Appellant's sixth assignment of error relates to the introduction of confidential communications between appellant and his attorney, and the introduction of private and personal records alleged to have been obtained by the defendant by means of rifling the private file used by, and exclusively under the control of, the appellant. This private file contained a copy of the letter to Attorney Holmes to which reference has been made and a copy of a letter written to Attorney Herman Ekern in Chicago, in which appellant requested him to file a claim in his behalf against his brother's estate for back salary. From the statement of facts in the respondent's brief as to the manner in which the so-called private file of the appellant came into her possession, and in view of the fact that the letters were admitted by appellant's counsel without objection, the trial court did not err in admitting them in evidence. In 4 Wigmore, Evidence (2d ed.), p. 626, § 2183, the author states the rule as follows:

"For these reasons, it has long been established that the admissibility of evidence is not affected by the illegality of

the means through which the party has been enabled to obtain the evidence."

In *Ware v. State*, 201 Wis. 425, 427, 230 N. W. 80, the court said:

"The common-law rule is that the admissibility of evidence is not affected by the illegality of the means by which it was obtained. . . . Nor can we . . . subscribe to the suggestion that the courts have a discretion to exclude evidence, the admission of which is not unconstitutional, because unethically secured."

See cases there cited. *State ex rel. Alford v. Thorson*, 202 Wis. 31, 231 N. W. 155.

From our consideration of the facts thus far, under the authorities cited, we conclude that there was no error in the trial court's refusal to give the requested instruction referred to in the third assignment of error.

The fifth assignment of error relates to the alleged misconduct of the juror, Arntson, who acted as foreman of the jury. On his *voir dire* examination he stated he did not know either appellant or Mr. Gantenbein, who at that time was a party to the action and a witness upon the trial. It appears that after the judgment herein was entered, certain members of the jury, upon being interviewed, made affidavits to the effect that Arntson, during the deliberations of the jury, stated that Gantenbein was known to him for a long time; that he had known him since he was the bookkeeper at National Gauge; and that he could be relied on. Further, he stated that he knew Joe Kidder for a long time too. The juror, Jones, made affidavit to the same effect. The juror, Lee, made affidavit as follows:

"Arntson, after he was elected foreman of the jury, made the statement that he had known Gantenbein ever since he had been at the National Gauge Company and that he had known Joe Kidder for a long time, and that Joe had always been a drunkard and a good-for-nothing; I then told him that he shouldn't be serving on the jury in that case; he read parts

of the exhibits to the jurors and I clearly remember that Arntson said that it made no difference what the jury decided because the case was going to the supreme court anyway."

On these affidavits, plaintiff moved to set aside the judgment entered and the verdict rendered and for a new trial on the grounds of misconduct on the part of the juror, Arntson. When the motion came on for hearing, Juror Arntson was brought before the court and examined at length by the court and counsel for the respective parties. He denied the statements alleged to have been made in the juryroom.

The defendant filed counteraffidavits of six or seven of the other jurors to the effect that the alleged statements were not made by Arntson; that the case was honestly and fairly considered by all of the jurors; that each juror independently arrived at his own verdict; and that it was unanimous. Mr. Gantenbein made affidavit to the effect that he did not know Arntson either to speak to or by sight.

In its decision denying the plaintiff's motion for a new trial the court said:

"I conclude, therefore, from the affidavits which I receive in evidence now, and in consideration also of the testimony of Juror Arntson, that the petition for a new trial, or rather motion for a new trial, must be denied. The law in this state is quite clear; in fact, it is one branch of the law that is clear and decisive, that twelve jurors after arriving at a verdict cannot later by affidavit impeach that verdict, except upon certain conditions and exceptions. And these affidavits of the plaintiff do not, as I see them, come within those exceptions."

On the facts disclosed, we find no error in the trial court's denial of the motion for a new trial. *Koss v. A. Geo. Schulz Co.* 195 Wis. 243, 218 N. W. 175, and cases there cited; *Woodward v. Leavitt*, 107 Mass. 453. Sec. 274.37, Stats., provides:

"No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the

ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

This statute has had a liberal construction. In *Koepp v. National Enameling & Stamping Co.* 151 Wis. 302, 306, 139 N. W. 179, this court said:

"There may be want of harmony as to what is the legislative will incorporated in a statute, yet none as to whether that will should be given its intended vitality. The former may proceed from variant angles of judicial vision or any one of several other legitimate circumstances. It is now, by the late most emphatic expression giving direction to judicial thought, made plain that the final termination of litigation must not be delayed by errors of trial courts, however numerous and inexcusable, unless it shall appear with reasonable certainty, that, had they not occurred, the result might, probably, have been more favorable to the one complaining of them.

"In no other way than the one suggested can sec. 2829, Stats. (1898), supplemented by ch. 192, Laws of 1909, in letter and spirit, be given proper place in our judicial system. There is a presumption in every case, till evidentiarily overcome from an examination of the whole proceedings, not only against error, but, in case of error, against its being prejudicial,—that is, its affecting any substantial right of the party complaining. To overcome such presumption there must be affirmatively,—that is evidentiarily,—a reasonably clear appearance from the record that the error, not only harmed such party, in that it might have probably changed the result; but, harmed him in a material degree."

The jury verdict is fully sustained by the evidence in this case. No prejudicial error is disclosed.

*By the Court.*—Judgment affirmed.