The plaintiff administrator claimed the ownership and sued for the recovery of certain certificates of stock, to wit, (a) a certificate of stock (No. 993) in the Mechanics Perpetual Building Loan Association, of Charlotte, North Carolina, for 50 shares, payable to R. M. Waldroup of H. L. Waldroup; (b) a certificate (No. 882) for 35 shares of stock in the Mutual Building Loan Association, of Charlotte, North Carolina, payable to R. M. Waldroup or H. L. Waldroup; (c) (d) (e) (f) (g) and (h), Certificates Nos. J-4, 229, 754, 755, 1536, 2474, for an aggregate of 74 shares of stock in the Blue Ridge Building Loan Association, of Asheville, North Carolina, of the par value of $100.00, all payable to R. M. Waldroup; and (i) one note of the face value of $416.35, made payable to R. M. Waldroup or Hattie L. Waldroup.
In his complaint the administrator alleges: "R. M. Waldroup constituted his wife, Hattie L. Waldroup, his agent to withdraw or otherwise dispose of the stock in the Blue Ridge Building Loan Association herein before set forth, by a paper writing as follows: `For Value Received, I hereby transfer, set over and assign to R. M. Waldroup, or Mrs. Hattie L. Waldroup, either or the survivor, all my right, title and interest in and to the following certificates of stock of Blue Ridge Building Loan Association: Certificate No. 42, for 10 shares in series 65; Certificate No. 299, for 6 shares dated January 1, 1931; Certificate No. *Page 181 
754, for 2 shares dated January 1, 1932; Certificate No. 755, for 2 shares dated January 1, 1932; Certificate No. 1536, for 40 shares dated October 1, 1933; Certificate No. 2474, for 10 shares in series No. 64, a total of seventy shares, and authorize the Blue Ridge Building Loan Association to make the necessary transfer on the books of the Association. Witness my hand and seal, this 29th day of February, 1936. R. M. Waldroup (Seal). Witness: ..............'" All of these items are alleged to be in possession of defendant.
In her answer the defendant denies the title of the administrator to the items set up and made the subject of his suit, and avers that she is the sole beneficial owner thereof, not merely by virtue of the conveyance set out in the complaint and there construed as creating an agency, but by reason of the fact, as she alleges, that the stocks and note in dispute were purchased with her own individual money.
The complaint was amended to set up that the sole distributees of the estate of Waldroup were his wife and his mother.
Upon the trial the plaintiff introduced evidence substantially as follows:
Mr. E. Y. Keesler, an employee of the Mutual Building Loan Association, of Charlotte, identified the certificates of stock issued by that association and these were introduced in evidence.
Mr. Keesler further testified that the certificate identified, payable to R. M. Waldroup or H. L. Waldroup, replaced several prior certificates issued to R. M. Waldroup, and that there was no exchange of funds at the time it was issued; that he did not handle personally the transaction by which the first certificates were issued, and that the records pertaining to the certificates which he identified were not made under his direction and supervision, but that they were handled by a Mr. Long.
Witness further testified that about 22 January, 1935, all these numbered stock certificates, five of them, were sent to the association by Dr. Waldroup for exchange by mail, with instructions that one new certificate be issued in the total sum of $3,500.00, the same aggregate amount, to R. M. Waldroup or H. L. Waldroup. The effective date of that transfer was 1 September, 1934, and in lieu of these five certificates there was issued certificate 882 for 35 shares of stock, which is still outstanding. The checks for dividends were made payable to R. M. Waldroup or H. L. Waldroup. No further correspondence was found with reference to the matter.
Mr. T. G. Barbour, employed as secretary and treasurer by Mechanics Perpetual Building Loan Association, testified, in substance, that about 31 December, 1929, the corporation sold and issued shares of stock to R. M. Waldroup and issued six certificates, which witness referred to in detail; that afterward the association called in these shares "for the *Page 182 
purpose of receiving cash or a new certificate bearing interest at a lower rate." Under this call Dr. Waldroup surrendered these certificates and a new certificate for 50 shares (No. 993) was issued to R. M. Waldroup or H. L. Waldroup, dated 1 October, 1935. "Dr. Waldroup was notified of the desire of the corporation to call in the certificates by form letter. I do not have the original or duplicate original of that letter. In response to the form letter sent to stockholders, the company received a letter from Dr. Waldroup. The letter is as follows: `Bryson City, N.C. 12/16/35. Mechanics Perpetual B. L. Assoc. Please find enclosed my stock certificates for change in interest rate as per your letter. Please write the new stock to "R. M. or H. L. Waldroup." I want both names so if anything should happen the other would cash in without the usual red tape. Yours truly, (Signed) R. M. Waldroup.'" The change in the certificate was made in pursuance to this letter. Dr. Waldroup had been the payee in the former certificates which this replaces.
J. P. Brown testified for plaintiff that he was receiver of the Blue Ridge Building Loan Association and had custody of the books extending back to 1929, in which is recorded the shares of stock issued, and to whom. That the record showed the original shares of stock issued to R. M. Waldroup, except certain shares of stock issued to others, as, for instance, Mrs. Mona Baskeete, and transferred to Waldroup.
Plaintiff introduced the stubs of the certificates originally issued to Waldroup.
Mrs. E. H. Bailey testified for plaintiff that she was employed by the receiver of the Blue Ridge Building Loan Association and had worked for the association itself, prior to the receivership, continuously down to the time of the receivership. The witness denied any personal knowledge of the transactions save that which was a matter of record, but testified as to certain of these certificates issued to Dr. Waldroup in the year 1927, and that the records showed that Dr. Waldroup had procured a loan of $6,000 on that stock. In October, 1933, the $10,000 of stock was canceled, the $6,000 stock loan repaid, and $4,000 stock issued to Dr. Waldroup. Witness testified that she was personally acquainted with Dr. Waldroup and did not know of any other person having anything to do with the stock. She testified that dividends were paid to Dr. Waldroup. Witness testified that she was witness to the paper executed by Mrs. Baskeete to Dr. Waldroup transferring certain shares of stock. The paper writing contained the entry that the stock was payable to "R. M. Waldroup or Mrs. Hattie L. Waldroup, either, or the survivor." Continuing, on cross-examination, this witness testified that pursuant to this paper writing by Dr. Waldroup, and witnessed by herself, she transferred the stock on the books in accordance with his direction. *Page 183 
The plaintiff lodged numerous exceptions to the cross-examination, in which the witness was permitted to say that she transferred the stock upon the books. Witness further testified that all the stock was fully paid for.
The defendant's evidence may be summarized as follows:
Mrs. Hattie L. Waldroup testified, over objection of the plaintiff, that she had been in the possession of Certificate No. 882 in the Mutual Building Loan Association of Charlotte since some time in January, 1935, and that she kept it in her own private desk. She testified to the same effect as to Certificate No. 993, issued by Mechanics Perpetual Building 
Loan Association of Charlotte, which had been introduced in the evidence. As to the certificates of stock issued by the Blue Ridge Building Loan Association, she testified that she had had them in her possession since soon after they had been issued and had kept them in her private desk at home. As to the note which the plaintiff sought to recover, the witness testified that she had had it in her possession since it was issued.
Witness further testified that since the year 1927 she owned and operated a business in Bryson City known as the "Ice Plant business," and that her net annual income was from $2,500.00 to $3,000.00 a year, and that she still owned the ice plant.
E. H. Corpening testified for the defendant that he had lived in Bryson City since 1912 and was acquainted with R. M. Waldroup from that time until his death; that he had had a conversation with Dr. Waldroup concerning his business affairs on two occasions; first, during the summer of 1934. That conversation took place in the office of the register of deeds of Swain County at the time witness was chairman of the board of county commissioners.
Over objection, the witness was permitted to testify that the conversation principally concerned some deeds that transferred property; that witness had drawn two different deeds for Dr. Waldroup. At this time, Dr. Waldroup made certain statements concerning previous deeds. "He mentioned a deed to Mrs. H. L. Waldroup in 1927. He mentioned concerning that deed that the reason for that deed was he wanted his property to go to the survivor, and we drew two deeds that way. He talked to me concerning the Ice Plant property, and the income from the Ice Plant. He said the income from it, which was two or three thousand dollars a year, went to Mrs. Waldroup. He did not state definitely who owned it, but the income from it was hers."
Over further objection by plaintiff, the witness testified that Dr. Waldroup mentioned two blocks of building and loan stock, one the Charlotte stock and the other the Asheville stock, and stated that one was in the name of R. M. or H. L. Waldroup and the other he had made *Page 184 
an assignment for. There was objection to this on the part of the plaintiff. The witness testified that Dr. Waldroup discussed his affairs with him frequently and said that he wanted the stock to go to the survivor.
The other conversation was about Thanksgiving, 1936. At this time, also, Dr. Waldroup mentioned the building and loan stock, making practically the same statement with regard thereto and supplementing this with some reference to his state of health. Witness testified that he saw Dr. Waldroup frequently and for a large part of the time talked to him every day.
The plaintiff entered objection to the testimony concerning conversations with Dr. Waldroup.
Mrs. Maude Hunter testified for the defendant substantially that she had lived in Bryson City forty-six years and had talked with Dr. Waldroup before his death. Over objection she was permitted to state that Dr. Waldroup told her that he was investing in the building and loan association of Asheville, Blue Ridge Building Loan Association, and Building Loan Association of Charlotte, for Mrs. Waldroup. She testified that the conversation was brought up just after her husband died, about 1930, at which time witness' mother had money to invest in building and loan. She got Dr. Waldroup to write letters for her. Plaintiff moved to strike out all of this testimony.
At the close of all the evidence, plaintiff moved for a directed verdict in favor of the plaintiff on the issues tendered, the motion was denied, and plaintiff excepted.
The following issues were submitted to the jury without objection and answered as appears:
"1. Is the plaintiff the owner and entitled to the possession of 50 shares of stock in Mechanics Perpetual Building Loan Association of Charlotte, N.C. evidenced by Certificate No. 993, bearing date on or about October 1, 1935, payable to R. M. Waldroup or H. L. Waldroup, as alleged in the complaint? Answer: `No.'
"2. Is plaintiff the owner and entitled to the possession of 35 shares of stock in Mutual Building Loan Association, of Charlotte, N.C. evidenced by Certificate No. 882, bearing date on or about January 22, 1935, payable to R. M. Waldroup or H. L. Waldroup, as alleged in the complaint? Answer: `No.'
"3. Is the plaintiff the owner and entitled to possession of the 70 shares of stock in the Blue Ridge Building Loan Association, of Asheville, N.C. represented by Certificate J-42 for 6 shares, Certificate No. 229 for 6 shares, Certificate No. 765 for 2 shares, Certificate No. 755 for 2 shares, Certificate No. 1536 for 40 shares, and Certificate No. 2474 for 10 shares, as alleged in the complaint? Answer: `No.'
"4. Is the plaintiff the owner and entitled to the possession of a note *Page 185 
for $416.35, dated on or about December 9, 1935, executed by T. W. Porter, administrator of the estate of J. W. Porter, deceased, to Dr. R. M. Waldroup or Hattie L. Waldroup, as alleged in the complaint? Answer: `No.'"
On these issues the court, amongst other instructions to the jury, charged as follows: "The court instructs you that the burden is on the plaintiff, the administrator, to establish his ownership to the stock, and that the defendant does not have to prove she is the owner, but that the plaintiff must affirmatively establish that he is the owner. And if from the evidence you find that the stock was the proceeds of an investment made by Dr. Waldroup for Mrs. Waldroup, then she would be the owner of the stock regardless of the name to whom it was made out, and then in that event it would be your duty to answer that issue `No.' finding that the property did not belong to the administrator, but to Mrs. Hattie L. Waldroup."
After instructing the jury that the fact that the original issues of stock were made to Waldroup would, in the absence of rebutting evidence, raise the presumption that he was the owner, the court charged: "Now you will notice that in giving you that instruction that the court made the statement that in the absence of rebutting evidence or nothing else appearing, it would be your duty to make certain findings. The court instructs you that if you should find there is rebutting evidence or that something else appears, to wit, if you shall find this stock was the proceeds of the moneys of Mrs. Waldroup which was invested for her by her husband, Dr. Waldroup would in that event not be the owner of it, and it would be your duty to answer the issue `No.'"
Similar instructions were given upon the other issues.
All issues were answered in favor of defendant; thereupon, judgment was entered in favor of the defendant, and plaintiff appealed, assigning error.
A careful scrutiny of the evidence to which plaintiff objected fails to disclose reversible error.
The two more serious challenges to the introduction of that evidence are directed to the testimony of E. H. Corpening and Mrs. Maude Hunter, who testified as to conversations had with Dr. Waldroup with reference to the stock now sought to be recovered from this defendant. In view of the construction which the court must give to the action of Dr. Waldroup in causing the transfer of stock in some of the several *Page 186 
associations concerned and of the paper writing admitted by both sides to have been executed by Dr. Waldroup transferring stock to himself and wife jointly, it seems clear to us that the statements of Dr. Waldroup disparaging to his own exclusive ownership are strongly corroborative of the defendant's position with regard to these disputed transactions and are relevant and admissible. Wilson v. Williams, 215 N.C. 407,2 S.E.2d 19; Wilder v. Medlin, 215 N.C. 542, 2 S.E.2d 549.
It has also been suggested that Mrs. Waldroup was incompetent to testify as to the possession of the several certificates of stock and of the note in controversy as being excluded under the provisions of C. S., 1795, as an interested party. This is upon the theory that such statement implied a delivery of the stock to the witness by Dr. Waldroup himself, such delivery constituting a personal transaction between the two having an important bearing on the transfer of title.
Although there are authorities supporting such a position (see 70 C. J., 313), the better opinion is clearly in favor of the competency of such evidence. Citation supra. McCombs v. McCombs, 204 Wis. 293,234 N.W. 707. But it is not an open question in this State. InThompson v. Onley, 96 N.C. 9, 13, where the issue was between the defendant and the administrator of the deceased person to whom an unendorsed note in defendant's possession is payable, and where, of course, the question of delivery was paramount, defendant was permitted to testify that the note was in her possession at the commencement of the action. Passing on this the Court said: "It cannot be seen that the only source of the witness' information was a personal transaction or communication between her and the deceased." In the case at bar the fact of possession implies, perhaps even more strongly, that the possession had been derived from the corporations who issued the stock, and as to the note, from the maker of it, since it was payable to either plaintiff's intestate or defendant.
The question, however, seems to be academic in the case at bar, since the fact of possession is not in dispute. The plaintiff brings an action for the recovery of the specific items, and in his complaint alleges the possession of the defendant. The inference of delivery of the certificates of stock and note by Dr. Waldroup is as strongly raised by the admitted facts as it would be by the testimony of the witness alone.
Under the Onley case, supra, the testimony must be regarded as an independent fact. See comparison of cases in Wilder v. Medlin, supra;Sutton v. Wells, 175 N.C. 1, 3, 94 S.E. 688; In re Will of Saunders,177 N.C. 156, 98 S.E. 378.
There are exceptions to the charge, relating to the burden of proof, with which we cannot deal adequately without attempting to remove *Page 187 
from the case some misapprehension of law respecting the theory on which the case was tried.
It was understood by the plaintiff, and the theory adopted by the court, without much protest on the part of the defendant, that the paper writing in which Dr. Waldroup purported to convey the Blue Ridge stock to himself and wife, with the rights of survivorship, as well as his conduct in requiring that new issues of stock in the other building and loan companies be made to himself and wife, with an indication that he intended survivorship, had no other effect than to create an agency in Mrs. Waldroup, terminated by the preceding death of her husband. This view is not consonant with the facts, or with a proper interpretation of either the paper writing referred to or the transaction by which Waldroup caused the new issues of stock to be made to himself and wife; and that view is not supported by the authorities cited in plaintiff's brief.
C. S., 1735, abolished survivorship in joint tenancy, with an exception as to partners, so that the surviving partner might apply the partnership assets to the partnership debts. After this has been accomplished, the remainder goes, under the Statute of Distributions, to those entitled.
But this statute abolished survivorship only where it follows as a legal incident to an existing joint tenancy. It did not, and does not, prevent persons from making agreements as to personalty such as to make the future rights of the parties depend upon the fact of survivorship. Taylor v.Smith, 116 N.C. 531, 535, 21 S.E. 202. Since there is nothing in public policy to prevent it, the right should be upheld.
Defendant cites in the brief Jones v. Fullbright, 197 N.C. 274,148 S.E. 229, and Nannie v. Pollard, 205 N.C. 362, 171 S.E. 341, both of which cases concern a joint checking account at the bank; and there is nothing in the evidence in those cases to indicate that the ownership of any part of the account had been transferred from the husband. Such an account might run from one cent to millions, and in its fluctuation the original items of deposit may have disappeared in the process of checking many times. The cases are not analogous to the one at bar. The other cases cited — Graham v. Graham, 9 N.C. 322; Morrow v. Williams, 14 N.C. 263;Dail v. Jones, 85 N.C. 221; Outlaw v. Taylor, 168 N.C. 511,84 S.E. 811; Speight v. Speight, 208 N.C. 132, 179 S.E. 461; Nixon v.Nixon, 215 N.C. 377, 1 S.E.2d 828 — all relate to attemptstotidem verbis to reserve a life estate in personalty with remainder over. This has nothing to do with a joint tenancy in personalty with survivorship created by contract — either bilateral agreement or gift. Taylor v.Smith, supra.
We construe the conveyance, admittedly made by Dr. Waldroup, with reference to the Blue Ridge stock, as creating a common ownership in *Page 188 
the property which is its subject until one of them should die, with the right of survivorship.
As to the other corporations involved, just as in all corporations, the title of the stock might be by assignment, without reference to registry on the books of the company — which is good inter partes — following which the legal title might be perfected by such registry and the delivery of the certificates. Havens v. Bank, 132 N.C. 214,43 S.E. 639; Cox v. Dowd, 133 N.C. 537, 45 S.E. 864. But this is by no means an exclusive method of transfer. It may be done by direction of the holder and owner of the stock upon the books of the company which, followed by delivery, or a surrender of the dominion of the certificates to the transferee, would make the title complete. C. S., 1164; Mitchell v. Realty Co., 169 N.C. 516, 86 S.E. 358; Bleakley v.Candler, 169 N.C. 16, 84 S.E. 1039; Richardson v. Emmett,61 A.D. 205, 70 N.Y. S., 546, 170 N.Y., 412, 63 N.E. 440;Chicago Title Trust Co. v. Ward, 332 Ill. 126, 163 N.E. 319.
The position of the defendant here is even stronger, because Waldroup required the issue of new stock to himself or wife, which was so registered upon the books of the company, under his instruction, under circumstances which might be evidence of a gift inter vivos, creating an estate for the common enjoyment of himself and wife, with the right of survivorship upon the death of one of them.
In all these matters we are dealing with certificates of stock issued to plaintiff's intestate and Hattie L. Waldroup. We use the term "and" advisedly, because consistently with the apparent intention of the assignment appearing in the record, the letters and conduct of Dr. Waldroup in having the stock issued that way and so registered upon the books of the corporations, the disjunctive (used no doubt to emphasize the survivorship) "or" may be read as the conjunctive "and." Ham v. Ham, 168 N.C. 487,84 S.E. 840; Pilley v. Sullivan, 182 N.C. 493, 109 S.E. 359; Richmond v.Woodward, 32 Vt. 833, 838; Litchfield v. Cudworth, 32 Mass. 23, 27.
Under this evidence and its legal implications, it is clear that the plaintiff was not entitled to the instruction that if the jury believed the evidence they should find in his favor.
On the issues relating to the ownership and right to possession of the stocks in the building and loan associations, the judge gave instructions to the jury, of which the following is typical: "The court instructs you that the burden is on the plaintiff, the administrator, to establish his ownership to the stock, and that the defendant does not have to prove she is the owner, but that the plaintiff must affirmatively establish that he is the owner. And if from the evidence you find that the stock was the proceeds of an investment made by Dr. Waldroup for Mrs. Waldroup, *Page 189 
then she would be the owner of the stock regardless of the name to whom it was made out, and then in that event it would be your duty to answer that issue `No.' finding that the property did not belong to the administrator, but to Mrs. Hattie L. Waldroup." The plaintiff complains that this instruction placed a greater burden upon him than the law requires.
It is true that the burden of an affirmative issue, such as those submitted to the jury in the instant case, is upon the plaintiff and does not shift during the course of the trial. Everett v. Mortgage Co.,214 N.C. 778, 1 S.E.2d 109; Benner v. Phipps, 214 N.C. 14,197 S.E. 549; Williams v. Ins. Co., 212 N.C. 516, 193 S.E. 728;Stein v. Levins, 205 N.C. 302, 171 S.E. 96; Hunt v. Eure,189 N.C. 482, 127 S.E. 593. But the burden is upon one who asserts an affirmative plea to establish it by appropriate proof. Benner v. Phipps,supra; Everett v. Mortgage Co., supra; Mitchell v. Whitlock, 121 N.C. 166,28 S.E. 292; Mayo v. Jones, 78 N.C. 402.
The trial judge placed the claim of the plaintiff and the claim of the defendant in apposition in this instruction, and the jury may have been led to believe that it was incumbent upon the plaintiff to overcome the evidence of the defendant as to her affirmative plea by preponderating proof without regard to any burden in that respect which the law of evidence placed upon the defendant.
This case, as we have seen, was tried upon the theory that the assignment of the Blue Ridge stock, and the acts of Dr. Waldroup in causing new stock to be issued to himself and wife, and so registered on the books of the corporations of the two other building and loan associations, created merely an agency in Mrs. Waldroup, which terminated at the death of Waldroup. Under this theory, the only avenue of approach to a consideration of the subject permitted the jury was toward a consideration of the equitable claim asserted by Mrs. Waldroup. However erroneous this theory was, it is impossible for us now to say what the jury might have done if the case had been tried otherwise; and upon the theory adopted, the instruction was erroneous and confusing as to the burden of proof.
It is to be observed here that the same evidence of plaintiff which was considered to establish his prima facie title to the stocks also disclosed their assignment by Dr. Waldroup and their transfer upon the books of the corporation and new issue of stock according to his instructions. The defendant made no appropriate motion with regard to the effect of this evidence legally considered, and we make no decision here as to its sufficiency in establishing plaintiff's title. If it merits submission to the jury, the burden which rests upon the plaintiff with regard to it should be *Page 190 
properly explained, as well as the burden which rests upon the defendant to support her affirmative claim with the requisite degree of proof.
But the result of the trial with regard to the note should not be disturbed.
The plaintiff contends that the judge erroneously instructed the jury that the possession of this note raised a presumption of ownership which he says is not true as against a payee, and cites Hayes v. Green, 187 N.C. 776,123 S.E. 7. In the cited case the unendorsed note payable to plaintiff was in the hands of a holder who was not payee. In this case both Mrs. Waldroup and plaintiff's intestate were payees, and the plaintiff has shown no superior right of ownership or possession. The judge was correct in his instruction to the jury that if they believed the evidence they should find in favor of the defendant.
For the errors pointed out, the plaintiff is entitled to a new trial, with respect to the stocks mentioned in the first three issues, and it is so ordered. With respect to the fourth issue, involving the note, we find no reversible error.
Partial new trial.