### CHARLES M. BLEAKLEY v. R. L. CANDLER.

(Filed 14 April, 1915.)

**Corporations—Shares of Stock—Collateral—Transfer on Books—Judgment Creditor—Priorities.**

A pledgee of certificates of stock in a private corporation does not lose his priority of lien to an attachment creditor because the transfer of the collateral has not been theretofore made on the books of the corporation (Revisal, sec. 1168); for the books not being open to public inspection, no good purpose would be thereby subserved, and the effect of a requirement of this character would be to restrict the negotiability of the stock, unduly hamper commercial transactions in respect to it, and consequently depreciate its value.

APPEAL by intervenor from *Lyon, J.,* at November Term, 1914, of FORSYTH.

Action instituted against the defendant Candler to recover the sum of $300 due by note and to enforce an attachment levied upon five shares of stock in the Gilmer Bros. Company, a corporation of North Carolina.

The Commonwealth Bank intervened, claiming that it was the owner of said stock.

The parties agreed upon the following facts:

1. That Charles W. Bleakley is a resident of the State of Virginia, and at the time of the institution of this suit the defendant R. L. Candler was a resident of the State of Maryland, but that since the institution of the action he has died, and L. A. Vaughn of Winston-Salem, N. C.,

has been appointed his administrator; that the interpleader, The Commonwealth Bank, is a banking corporation, organized under the laws of the State of Maryland, doing business in the city of Baltimore in said State; and that Gilmer Bros. Company, the garnishee, is a corporation organized under the laws of the State of North Carolina, with its principal office and place of business in Winston-Salem, N. C.

2. That on 27 June, 1905, Stock Certificate No. 74 for five shares of Gilmer Bros. preferred stock, of the par value of $100 per share, was issued to R. L. Candler, and that the stub of Certificate No. 74 in the possession of Gilmer Bros. Company bears no entries since the date of the issue of the stock.

3. That on 27 October, 1911, R. L. Candler borrowed from the Commonwealth Bank, in the city of Baltimore, State of Maryland, the sum of $700, and executed his promissory note dated 27 October, 1911, for the sum of $700, payable 1 March, 1912, and at the time he secured the said loan he delivered to the bank with the note, as collateral security, Certificate No. 74, for five shares of Gilmer Bros. preferred stock, said certificate being indorsed in blank by him before delivery to the bank.

4. That there is still a balance due on said note of $475, with interest on $700 from 1 March, 1912, to 26 October, 1912, and on $475 from 26 October, 1912, until paid, and that the said Commonwealth Bank still holds said Stock Certificate No. 74 for five shares of Gilmer Bros. stock as collateral security for the payment of said note.

5. That on 31 August, 1912, the plaintiff Charles W. Bleakley instituted an attachment suit in the Superior Court of Forsyth County against R. L. Candler to recover the sum of $300, with interest from 28 February, 1911, said amount being due the said Charles W. Bleakley upon a note executed by R. L. Candler for the sum of $300, in the city of Baltimore, Maryland, on 28 February, 1911. That a warrant of attachment was issued in said action and a summons was served upon Gilmer Bros. Company to appear before the clerk of the Superior Court of Forsyth County and answer upon oath what it owed the defendant R. L. Candler, or what stock the said R. L. Candler had in Gilmer Bros. Company at the time of the service of the attachment, as appears in the record.

6. That Gilmer Bros. Company answered that the stock book of Gilmer Bros. shows that on 27 June, 1905, Stock Certificate No. 74 for five shares of Gilmer Bros. Company preferred stock of the par value of $100 was issued to R. L. Candler, and that said stock certificate is not now in the possession of Gilmer Bros. Company, and it has no knowledge of where said stock certificate now is. Also that it has no knowledge of any debts or effects belonging to R. L. Candler, as appears in the answer of Gilmer Bros. Company.

2—169.

7. That on 5 September, 1912, the sheriff of Forsyth County served the following notice upon Gilmer Bros. Company:

"You will take notice that by virtue of an attachment issued in the above entitled cause from the Superior Court of Forsyth County, a copy of said attachment having been delivered to you, that I do levy upon the five shares of stock owned in your company by the defendant R. L. Candler, evidenced by Certificate No. 74, and do forbid you from making any transfer of the said stock, or of the certificate representing said stock, upon your stock transfer book until the orders of the court permit you to do so, in the cause now pending as entitled above."

8. That the following is a copy of article 9, sections 2 and 3, of the by-laws of Gilmer Bros. Company:

"SEC. 2. The shares of the company shall be transferable only on the books of the company, upon surrender and cancellation of the outstanding certificates for the shares as transferred, and a new certificate issued therefor.

"SEC. 3. The transfer book shall be the only evidence as to who are the shareholders entitled to vote at any meeting of the stockholders."

9. That the Commonwealth Bank has interpleaded in said action and has asked that it be decreed to have a lien on said five shares of Gilmer Bros. stock prior to that of the plaintiff.

10. That the Commonwealth Bank has not advertised the five shares of stock for sale, but is holding same, and that Gilmer Bros. Company has not paid out any dividends on said stock, but is holding same pending the outcome of this action.

11. That no transfer of Stock Certificate No. 74 was ever made on the transfer book of Gilmer Bros. Company, but that from the transfer book of Gilmer Bros. Company the said R. L. Candler appears to be the owner of Certificate No. 74; that Gilmer Bros. Company has not been requested to make any entry on its transfer book of any kind at any time prior to the issuing of the attachment in this cause, and had no knowledge or notice of the transfer to the Commonwealth Bank prior to the institution of this action and service of this attachment.

12. That L. A. Vaughn, administrator of R. L. Candler, has in his hands, as assets belonging to the estate, the sum of $401.80 in cash, and that claims have been filed by creditors with the said L. A. Vaughn, administrator, aggregating $543.53, other than the claims of this plaintiff; that the $300 claim of plaintiff would make total claims filed with L. A. Vaughn, administrator, and due by the estate of R. L. Candler of $843.53.

His Honor rendered judgment in favor of the plaintiff, holding that the attaching creditor had priority over the bank, and the bank excepted and appealed.

*Louis M. Swink for plaintiff.*
*Manly, Hendren & Womble for defendant.*

ALLEN, J. The authorities are in conflict as to the rights of the holder of a certificate of stock deposited as a security for a loan, which has not been transferred on the books of a corporation, as against an attaching creditor, under statutes similar to our own (Rev., sec. 1168), which provides: "The shares of stock in every corporation shall be personal property, and shall be transferable on the books of the corporation in such manner and under such regulations as the by-laws provide; and whenever any transfer of shares shall be made for collateral security, and not absolutely, it shall be so expressed in the entry of the transfer."

It is held in some jurisdictions that the creditor acquires priority by the levy of the attachment, upon the ground that the statute is mandatory, and that it is equivalent to a requirement of registration, and the holder of stock which has not been transferred in accordance with the statute is treated as would be the holder of an unregistered mortgage as against one which has been registered. *Bank v. Folsom,* 7 N. M., 611; *Sabin v. Bank,* 21 Vt., 353; *Bank v. Hastings,* 7 Col. App., 129; *In re Murphey,* 51 Wis., 519.

The weight of authority is, however, against this view, and in favor of the position that the purpose of the statute requiring a transfer upon the books of the corporation is to prevent fraudulent transfers and to protect the corporation in determining the question of membership, the right to vote, the right to participate in the management of the corporation, and the payment of dividends. 2 Cook on Corp., 1367-1389; 4 Thomp. on Corp., sec. 4335; 1 Machen Mod. Law Corp., sec. 886; 3 Ruling Case Law, p. 864; *Masury v. Bank,* 93 F., 605; *Lund v. Mill Co.,* 50 Minn., 36; *Bank v. McElrath,* 13 N. J. Eq., 24; *Wilson v. R. R.,* 108 Mo., 609; *Tombler v. Ice Co.,* 17 Tex. Civ. App., 601; *McNeill v. Bank,* 46 N. Y., 331; *Comeau v. Oil Co.,* 3 Daly (N. Y.), 219; *Finney's Appeal,* 59 Pa. St., 398; *Clark v. Bank,* 61 Miss., 613; *Bank v. Gas Co.,* 6 Wash., 600; *Thurber v. Crump,* 86 Ky., 418; *Bank v. Standrod,* 8 Idaho, 740; *Lipscomb v. Condon,* 56 W. Va., 416; *McCluney v. Colwell,* 107 Tenn., 592; *Cooper v. Griffin,* 1 Q. B., 740; *Everett v. Bank,* 82 Neb., 191; *Bank v. R. R.,* 157 Cal., 573.

In 2 Cook on Corporations, page 1367, the author says: "The decided weight of authority holds that he who purchases for a valuable consideration a certificate of stock is protected in his ownership of the stock, and is not affected by a subsequent attachment or execution levied on such stock for the debts of the registered stockholder, even though such purchaser has neglected to have his transfer registered on the corporate books"; and again at page 1389: "The decisions and statutes of the

various States show clearly that public policy and the legitimate demands of trade have gradually caused the courts and legislatures of the various States to establish the rule that a sale or pledge of certificates of stock has precedence over a subsequent attachment levied on that stock for the debt of the vendor or pledgor, and that the failure of the pledgee or purchaser of the certificate to obtain a registry on the corporate books is not fatal to his interest in the stock."

The case cited from California is also reported in 21 A. and E. Anno. Cases, 139, to which there is a note, collecting the cases by States which fully support the opinion of the editor, that in the absence of a statute which in express terms or by necessary implication gives priority to the attaching creditor, it is generally held that the holder of the stock either as a purchaser or a pledgee has the preference, although the transfer of the stock has not been entered on the books of the corporation.

We adopt the latter position, which is not only supported by the weight of authority, but also, in our opinion, rests upon reason and a sound public policy.

Registration is for the purpose of giving notice, and is based upon the idea that the public have the right to inspect the registry, and this condition does not prevail with us as to the stock book of a private corporation, which those who are not stockholders nor interested in the corporation have no right to see.

As was said in the case from Kentucky, speaking of a statute like ours: "But the section does not operate as a registration law in the interest of the creditors of the stockholders, for the reason that the books of the company are not required to be kept open for the inspection of the public. The books are required to be kept open to the stockholders only; outsiders have no right to demand an inspection of the books."

The provision requiring a transfer upon the books of a corporation cannot be of any practical benefit to the outside creditor, because, as he cannot see the books, he can have no means of knowing whether the transfer has been made or not; and in this respect the law as to the registration of mortgages furnishes no analogy, because the registry of mortgages is open to the public.

The other view would also unduly hamper commercial transactions and would have a tendency to depreciate the value of stock, as do all restrictions upon its negotiation.

If it should be held that a transfer upon the books of a corporation is necessary to vest the title in a purchaser or a pledgee, the owner of stock in order to secure a loan would have to incur the expense and trouble of having the stock transferred to the lender upon procuring a loan, and of having it retransferred upon payment, and if he borrowed in sections where the books of the corporation were not accessible, it would make it

difficult, if not impossible, to procure a loan, and one of the elements of value would be greatly impaired.

It is true that in *Morehead v. R. R.,* 96 N. C., 365, there is an intimation that a transfer of stock can only be effectual by a transfer upon the books of a corporation, but the later cases of *Havens v. Bank,* 132 N. C., 214, and *Cox v. Dowd,* 133 N. C., 537, are in line with the current of authority.

In the *Havens case* the Court quotes with approval from *McNeill v. Bank,* 46 N. Y., 523, that "The common practice of passing the title to stock by delivery of the certificate with blank assignment and power has been repeatedly shown and sanctioned in cases which have come before our courts. . . . It has also been settled by repeated adjudications that, as between the parties, the delivery of the certificates with assignment and power indorsed passes the entire title, legal and equitable, in the shares, notwithstanding that by the terms of the charter or by-laws of the corporation the stock is declared to be transferable only on its books; that such provisions are intended solely for the protection of the corporation, and can be waived or asserted at its pleasure, and that no effect is given to them except for the protection of the corporation; that they do not incapacitate the shareholder from parting with his interest, and that his assignment, not on the books, passes the entire legal title to the stock, subject only to such liens or claims as the corporation may have upon it, and excepting the right of voting at elections."

The authorities and reasoning as to the effect of a public statute upon the rights of the parties have greater force when applied to the by-laws of a corporation, which are intended primarily to regulate dealings between the corporation and its stockholders.

We are therefore of opinion, upon reason and authority, that his Honor was in error in holding that the attaching creditor has a priority.

Reversed.